UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **DONALD EMERY, K95751,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 13-1315 |
| | ) |
| **CECIL POLLEY, Warden,** | ) |
| | ) |
| Respondent. | ) |

## ORDER AND OPINION

This matter is before this Court on Petitioner, Donald Emery's ("Emery"), Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [1], Respondent Cecil Polley's Answer [10], and Emery's Reply [12]. For the reasons set forth below, the Petition [1] is DENIED.

### BACKGROUND

Emery is an inmate at the Graham Correctional Center in Hillsboro, Illinois under the custody of Warden Cecil Polley. At his February 4, 2008 bench trial in the McLean County Circuit Court, Emery was charged with one count of unlawful possession of a controlled substance with intent to deliver, in that he knowingly possessed with the intent to deliver more than fifteen grams, but less than 100 grams, of a substance containing cocaine. Emery was also charged with one count of unlawful possession of a controlled substance with the intent to deliver more than 5,000 grams of cannabis.

At trial, Officer Jacob Zabukovec testified while on duty on the evening of July 27, 2007, he assisted Sergeant Kelley in returning a runaway juvenile ("DW") back to his home on Orlando Street in Normal, Illinois ("Orlando Street apartment"). During transport, DW informed the officers that his parents had drugs in their apartment. As DW was fourteen at the time, the

officers believed he was either exaggerating or lying. When the officers arrived at the apartment, Jeanette Emery ("Jeanette") opened the door.

Jeanette invited the officers inside the front door where the officers told her DW told them there were drugs in the home. Jeanette allowed the officers to search the home. The officers recovered more than twenty-five pounds of marijuana, more than fifty grams of cocaine, and three hundred dollars from the master bedroom of the Orlando Street apartment. The money and most of the cocaine were found in a Nike shoebox containing a pair of black Nike shoes, men's size 11.5. Officers found a majority of the marijuana in a filing cabinet that also contained a notebook with Emery's name on it as well as several mail items addressed to Emery.

Jeanette waived her Fifth Amendment privilege and testified during trial. Jeanette testified she was facing her own pending charges related to Emery's charges and had not received any promises from the State in exchange for her testimony, but had hopes that her testimony would bring closure to her case, thereby enabling her to go home, return to her children, and get back to work. On cross-examination, Jeanette testified she did not expect any preferential treatment. During Emery's case in chief, his attorney showed Jeanette a letter she had written to Emery indicating she had received a plea offer in exchange for her testimony. During cross-examination by the State, Jeanette explained she had never accepted the plea offer mentioned in her letter and was not testifying pursuant to an agreement.

Jeanette also testified Emery brought the marijuana and cocaine into their bedroom, she witnessed Emery package the marijuana for distribution, and helped him on one occasion. Jeanette also witnessed Emery's brother, cousin, and friend package the marijuana. Jeanette further testified Emery instructed her as to how she should handle her pending charges. The

State introduced letters Emery wrote to Jeannette; the letters instructed Jeanette how to handle the charges against her without implicating Emery.

Emery testified on his own behalf and denied all wrong-doing and implicated Jeanette. He testified he did not live at the Orlando Street apartment and had slept there a few times, but never on consecutive nights. Emery claimed he lived with various friends; however, in a sworn affidavit Emery executed shortly after his arrest, he gave the Orlando Street apartment as his residence. He testified he had no knowledge of the drugs found in the Orlando Street apartment and he witnessed Jeanette selling illegal drugs in the past.

Emery's brother, Kendall Emery ("Kendall") testified and largely corroborated Petitioner's testimony. Kendall testified that although Emery slept at the Orlando Street apartment, he did not live there. On cross-examination, Kendall admitted that shortly after his arrest on August 3, 2007, he told a law enforcement official he lived at Fairview Apartments, Orlando Avenue, Normal, Illinois.

On February 13, 2008, the judge found Emery guilty of possession of marijuana with intent to deliver and possession of a controlled substance with intent to deliver. On March 26, 2008, the court sentenced Emery to concurrent prison terms of fourteen years on both counts.

**Direct Appeal**

On July 2, 2009, Emery filed a direct appeal to the Illinois Appellate Court in which he contended: (1) the evidence was insufficient to support his convictions; (2) the trial court relied on evidence that had not been admitted into evidence; and (3) trial counsel was ineffective for failing to invoke Emery's marital privilege to challenge portions of Jeanette's testimony during trial. On November 25, 2009, the state appellate court confirmed Emery's conviction. People v. Emery, No 4-08-0585 (2009). On March 24, 2010, the Illinois Supreme Court denied Emery's

petition for leave to appeal ("PLA"), which raised only the ineffective assistance of counsel claim.

**Postconviction Review**

On January 20, 2010, Emery filed a petition for postconviction relief, amended on September 29, 2010, pursuant to 725 ILCS 5/122-1 in the Circuit Court of McLean County, Illinois. In his postconviction petition, Emery alleged 1) the trial counsel was ineffective for failing to provide him with discovery; 2) not effectively cross-examining Jeanette; 3) not effectively challenging the admission of his shoes; 4) not invoking his marital privilege; and 5) not investigating his letter to Jeanette. Emery also alleged the state knowingly relied on Jeanette's perjured testimony and the prosecutor lied about when he received Emery's letter to Jeanette and deceptively admitted the letters into evidence during trial.

Emery's postconviction petition was fully brief and the court held an evidentiary hearing. The state trial court denied the petition finding there was no evidence in the record supporting Emery's allegation that his trial counsel did not competently represent him; the prosecutor knowingly presented perjured testimony; and the prosecutor unlawfully manufactured letters placed in evidence. Emery appealed; however, his appellate counsel did not brief any issues raised in the postconviction petition, appealing only the $200 DNA fee assessed to Emery. The Illinois Appellate Court granted Emery's motion for summary remand to vacate the $200 fee; however, they denied Emery's motion for leave to file a brief on the merits.

On January 10, 2013, Emery filed a petition for leave to appeal in which he argued 1) his postconviction counsel was ineffective for failing to brief the merits of his claims; 2) the state knowingly relied on perjured testimony from Jeanette; and 3) the prosecutor lied about when he

received Emery's letter to Jeanette and deceptively admitted the letters into evidence during trial. On March 27, 2013, the Illinois Supreme Court denied Emery's PLA.

Emery's instant petition raises two grounds for relief: (1) the State knowingly relied on perjured testimony from Jeanette; and (2) the prosecutor knowingly manufactured evidence and deceptively introduced Emery's letters to the Court.

## DISCUSSION

**1. Legal Standard**

Before considering the merits of a petition for writ of habeas corpus brought under 28 U.S.C. § 2254, a district court must consider whether the petitioner has exhausted all available state remedies. If the answer to this question is "no," the petition is barred for failure to exhaust state remedies. Farrell v. Lane, 939 F.2d 409, 410 (7th Cir.), *cert. denied*, 112 S.Ct. 387 (1991); Henderson v. Thieret, 859 F.2d 492, 496 (7th Cir. 1988), *cert. denied*, 109 S.Ct. 1648 (1989). In other words, if a petitioner fails to give the state courts a full and fair opportunity to review his claims, then his petition must fail. Bocian v. Godinez, 101 F.3d 465, 468-69 (7th Cir. 1996).

Section 2254 provides that "[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State ..." 28 U.S.C. § 2254(b). Exhaustion occurs when federal claims have been presented to the highest state court for a ruling on the merits or when the claims could not be brought in a state court because no remedies remain available at the time the federal petition is filed. Farrell, 939 F.2d at 410; Boerckel v. O'Sullivan, 135 F.3d 1194, 1196 (7th Cir. 1998), rev'd on other grounds, O'Sullivan v. Boerckel, 526 U.S. 838, 845 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (a state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement). Section 2254(c) further provides that

"[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

If a claim has not been barred for failure to exhaust or for procedural default, the district courts must apply a strict analysis. 28 U.S.C. §2254(d) bars relitigation of any claim previously "adjudicated on its merits" in state court unless the decision of the state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on unreasonable determination of facts in light of the evidence presented in the State court proceedings.

28 U.S.C. 2254(d). See also Willimas v. Taylor, 529 U.S. 362, 402-404 (2000); Harrington v. Richter, 131 S.Ct.770, 784 (2011).

## 2. Analysis

### A. Procedural Default

Respondent contends Emery's claims are procedurally defaulted because he did not present his claims to the Illinois Appellate Court. On direct appeal, Petitioner's counsel did not raise claim one, instead focusing on claim two. In his *pro se* PLA, Petitioner's raised only the ineffective assistance of counsel claim.

While Emery raised his current claims in his *pro se* post-conviction petition, Emery's appellate counsel did not brief any issues that had been raised in Emery's petition. Emery filed two motions for leave to file a brief on the merits. On September 20, 2012, the State Appellate Court denied Emery's first motion because Emery was represented by counsel at the time he filed the motion. However, the State Appellate Court stated, "the motion may be renewed if appellant wishes to dismiss the Office of the State Appellate Defender and proceed solely as a pro se litigant." People v. Emery, No. 4-11-0917 (Ill. App. Ct., 2012). On September 28, 2012,

6

Emery filed a Motion for Leave to Allow Appellant Proceed Pro Se to Raise his Issues of Merit on Appeal. There is no evidence in the record suggesting the State filed a responsive brief. On October 5, 2012, the State Appellate Court denied Emery's motion without comment. The Respondent argues because Emery did not attach a proposed *pro se* brief setting forth his claims to his motion for leave, he did not properly present his claims.

Emery asserts that he attempted to exhaust his claims with Illinois Appellate Court but was precluded from doing so. Specifically, Emery argues

> In Petitioner's case he filed his "First" motion to proceed pro se, the Court declined in a[n] order that stated, "The motion may be renewed if Appellant wishes to dismiss the office of the state Appellate defender and proceeds solely as a pro se litigant." The Court did not direct Donald to file a proposed brief, but only to dismiss the Appellate defender first and then proceed pro se.
>
> Petitioner Emery refiled that same motion in compliance with the Court['s] order; making it clear he was dismissing the office of the state Appellate Defender…Petitioner['s] motion was subsequently denied by the Appellate Court with no given reasons. Docket Entry 12-1 at 52.

Emery's argument precisely echoes the conclusions drawn by the Court. "Not properly presenting" his claims does not mean fully briefed to the Respondent's satisfaction. The record clearly indicates Emery fully complied with the September 2012 order and the State Appellate Court still elected to deny his motion for leave to file his *pro se* petition on the merits without providing any rationale for its decision. See Lesure v. Atchison, 891 F. Supp.2d. 920, 927 (N.D. Ill. 2012); Duncan v. Hathaway, 740, F.Supp.2d 940, 947, (N.D. Ill. 2010). Based on the record, the Court cannot make a finding of procedural default.

### B. Jeanette Emery's Alleged Perjured Testimony

Regardless of the Court finding there was no procedural default, Emery's claims still fail on the merits. Emery's first claim is the State knowingly relied on perjured testimony from Jeanette. A prosecutor is forbidden from knowingly using false testimony in order to secure a

7

conviction. See Napue v. Illinois, 360 U.S. 264, 269 (1959). In order to obtain a new trial, the petitioner must establish: (1) there was false testimony; (2) the prosecution knew or should have known it was false; and (3) there is a likelihood that the false testimony affected the judgment of the jury. See United States v. Freeman, 650 F.3d 673, 677-79 (7th Cir. 2011). Emery alleges Jeanette received a deal prior to testifying, and therefore, Jeanette perjured herself when she stated on the stand that she was not receiving a deal in exchange for her testimony. Emery supports his claim by pointing to statements made the prosecutor during his post-trial hearing including "Mrs. Emery had received a benefit of the bargain for stepping up to the line, taking the stand, and testifying in this case." Docket Entry 11, Exh. L at 10.

The Court finds the record does not support Emery's contention that Jeanette's testimony was perjured. When asked on direct examination during Emery's case in chief whether the prosecutor made her offer that Count II of her pending charges would be dropped if she testified against Emery, Jeanette stated she did not have an agreement with the State. Docket Entry 11, Exh. I at 122. Jeanette further testified she did not speak to her attorney about the offer. Id. On cross-examination, Jeanette testified she received the offer at the very beginning of her case, but she did not participate in any discussions between the State Attorney's Office and her attorney about any agreements, and there was no agreement between her and the State's Attorney's Office about her case at the time of her testimony. Docket Entry 11, Exh. I at 123-24. During questioning by the judge, Jeanette testified that she never accepted the offer that she received at the outset of her case. Id.

As previously discussed, a claim of perjury pursuant to Napue requires a showing of a likelihood that the false testimony affected the judgment of the fact finder. Emery cannot meet this burden. Jeanette's testimony does not show perjury, it shows while there was discussion of

8

an offer between Jeanette's attorney and the State Attorney's Office, there was no agreement in place at the time Jeanette testified. The state court judge assessed Jeanette's credibility and found her "demeanor on the witness stand [was] almost consistent with a finding that she [was] telling the truth…While the Court [was] mindful that the witness was interested in securing some measure of leniency so that she could return home to her children, she took substantial responsibility for her misconduct." Docket Entry 11, Exh. A at 80. State court factual findings are presumed to be correct and can only be overturned through clear and convincing evidence. Coleman v. Hardy, 690 F.3d 811, 817 (7th Cir. 2011). The Court finds the state court's application of the law in assessing Jeanette's credibility was not unreasonable and the Petition is denied with respect to this claim.

**C. Alleged Manufactured Evidence**

Emery's second claim is the prosecutor deliberately deceived the trial court by manufacturing letters allegedly written by him to Jeanette and introducing the same into evidence. It is well-settled that "deliberate deception of a court…by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" Giglio v. United States, 405 U.S. 150, 153 (1972); see also, Napue v. Illinois, 360 U.S. 264 (1959), Pyle v. Kansas, 317 U.S. 213 (1942). The state court found that neither the State nor Jeanette manufactured the letters admitted into evidence. The Appellate Court of Illinois affirmed finding that "there was no abuse of discretion in the court's decision to admit into evidence defendant's letters to Jeanette. Defendant was available to testify regarding the content of those letter to dispute any inferences that could have been drawn by their contents." Docket Entry 11, Exh. Q at 25.

The Court has reviewed the record and can find no evidentiary support indicating the prosecutor manufactured the letters. To the contrary, Emery stated in his post-hearing brief that

9

he does not "contend the letters are manufactured in their entirety." Docket Entry 11-4 at 39. He further goes on to say, "I don't contend the letters aren't mine, nor do I contend the letters are mine." Id. Docket Entry 11-4 at 39. In his traverse, Emery states that this allegation primarily "stems from the Prosecutor's handling of this evidence which was unprofessional and outside of a prosecutor's duty." Docket Entry 12-1 at 63. Neither in his petition nor in his traverse does Emery identify what portions of the letters were false or definitively state he did not write the letters.

Emery also argues that the prosecutor misled the trial court with regards to when he received the letters. The prosecutor stated that he received the letters on February 4th, while Detective Cleveland testified that although he could not recall the specific date he turned over the letters, but believes it was either January 31st or February 1st. The state court noted that several witnesses gave inconsistent statements, and found that inconsistences in the statements did not indicate malice, but rather minor memory lapses. Nevertheless, even if Emery could prove that the prosecutor deliberately mislead the trial court as to when he received the letters, this does not establish that the prosecutor unlawfully manufactured the letters. The Court finds the state court's application of the law in this context was not unreasonable and the Petition is denied with respect to this claim.

### 3.     Certificate of Appealability

Rule 11(a) of the Rules Governing § 2254 Proceedings states "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   A petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead he must first request a certificate of appealability. Miller-El v. Cockrel, 537 U.S. 322, 335 (2003).  To obtain a certificate of appealability, a petitioner must make a

substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). "When the district court denied a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of a constitutional right and jurists of reasons would find it debatable whether the district court was correct in its procedural ruling." Id.

All of Emery's arguments were denied based on clearly established precedent. Emery failed to raise any argument that jurists of reason would find debatable and accordingly the Court declines to issue a certificate of appealability.

## CONCLUSION

Accordingly, for the aforementioned reasons, the Petition [1] is DENIED. All other pending motions are MOOT and this matter is now TERMINATED.

ENTERED this 3rd day of February, 2015.

                                                /s/ James E. Shadid
                                                James E. Shadid
                                                Chief United States District Judge